UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| G SIX CONSULTING, LLC, | § | |
| | § | |
| Petitioner/ Cross-Respondent, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 3:25-CV-2785-B |
| | § | |
| DICKEY'S BARBECUE | § | |
| RESTAURANTS, INC., | § | |
| | § | |
| Respondent/ Cross-Petitioner. | § | |

## MEMORANDUM OPINION AND ORDER

Two petitions are pending before the Court. First is G Six Consulting, LLC ("G Six")'s Petition to Confirm the Arbitration Award (Doc. 1). Second is Dickey's Barbecue Restaurants, Inc. ("DBR")'s Cross-Petition to Vacate the Arbitration Award (Doc. 7). For the reasons explained below, the Court **GRANTS** G Six's Petition to Confirm the Arbitration Award and **DENIES** DBR's Petition to Vacate the Arbitration Award.

## I.

## BACKGROUND

As the cross-petitions' titles suggest, this case arises out of arbitration proceedings between G Six and DBR. DBR, the franchisor of the national Dickey's Barbecue brand, entered into a franchise agreement with G Six to open an Illinois location. Doc. 23, G Six Resp., 1; Doc. 7, Pet. Vacate Award, 2. After G Six's franchise location closed, the relationship ultimately deteriorated into sharp disagreements over who was responsible for the failed franchise location. *See* Doc. 7, Pet. Vacate Award, 4; Doc. 23, G Six Resp., 1. Pursuant to the franchise agreement's terms, G Six sought relief through arbitration. Doc. 23, G Six Resp., 1. During the arbitration proceeding, a discovery

dispute arose. That discovery dispute and its resulting sanctions are central to DBR's Petition to Vacate. The relevant facts are as follows.

In October 2023, G Six initiated the underlying arbitration proceeding with the American Arbitration Association ("AAA"). Doc. 8-1, DBR App., 516. In addition to DBR, G Six named Roland Dickey, Jr., Jeff Gruber, and Deborah Longworth as respondents to the arbitration.[1] *See id.* Although DBR did not dispute that Dickey Jr., Gruber, and Longworth were its agents and officers, only DBR participated in the arbitration. *See id.* at 518-26.

Arbitrator Gary W. Leydig was appointed to the case. Pursuant to AAA procedures, the parties then engaged in pre-hearing scheduling discussions and agreed to conduct discovery prior to the arbitration hearing, including by deposition. *See* Doc. 27-1, G Six App., 84-105.

In November 2024, the Arbitrator dismissed Dickey Jr., Gruber, and Longworth from the arbitration after finding they were not subject to the arbitration's jurisdiction. Doc. 8-1, DBR App., 791.

From early September 2024 to the end of February 2025, G Six attempted, on several occasions, to take the depositions of Dickey Jr., Gruber, and Longworth. After Dickey Jr. and Gruber failed to appear for their noticed depositions in November 2024, G Six filed a motion to compel and motion for sanctions against DBR. *See id.* at 793-94. In the motion to compel, G Six argued that DBR had an obligation "to produce its officers, directors, or managing agents, which includes, but is not limited to, Dickey Jr. and Gruber, for their properly noticed depositions." *Id.* at 793. In response to the motion to compel, DBR stated that (1) it "agreed to present Mr. Gruber for

---

[1] G Six also named Lee Quinn and Stephen Mullett as respondents to the arbitration. *See id.* The Arbitrator dismissed Quinn and Mullet from the arbitration for lack of jurisdiction. *See id.* at 791.

deposition in his capacity as a control person at [DBR]"; (2) the deposition request for Dickey Jr. constituted an impermissible apex deposition; and (3) DBR had not committed sanctionable conduct because the deposition notices were served on Gruber and Dickey Jr. as individuals, rather than as agents of DBR. *Id.* at 820, 825-28.

In late December 2024, the Arbitrator issued his first deposition order. *See id.* at 913-16. The order granted G Six's motion to compel and deferred ruling on the sanctions motion. *Id.* at 916. The Arbitrator also noted that the AAA rules give him broad authority to oversee discovery and issue enforcement orders. *See id.* at 914. The Arbitrator then provided the parties with the below explanation regarding his grant of the motion to compel:

> On October 8, 2024. G Six served two "Notice[s] of Taking Videotaped Deposition" on [DBR]'s counsel and on several other individuals who had been named as parties in this matter. One notice called for the deposition of Mr. Gruber on November 5, 2024. The second notice called for the deposition of Mr. Dickey, Jr. on November 6, 2024. Both depositions were to take place in Dallas, Texas. On October l6, 2024, I issued deposition subpoenas for the depositions of these gentlemen at the same times and place. There is no dispute that both of these gentlemen are officers and/or agents of [DBR].
>
> Neither gentleman sought any sort of protective order from me. [DBR] did not seek a protective order. Rather, they all simply chose not to appear for their depositions. The excuse given was that Messrs. Gruber and Dickey, Jr. were not *individually* subject to the jurisdiction of this arbitration. And, indeed, I ruled on November 12 that Messrs. Gruber and Dickey, Jr. were not parties to an arbitration agreement with G Six, and dismissed them from this proceeding. [DBR's] excuse, however, is a red herring.
>
> [DBR] was obliged to produce Messrs. Gruber and Dickey, Jr. for their depositions. That, at point in time, their status as potential *individual* respondents was in dispute was irrelevant to the undisputed fact that they were, and are, also agents of [DBR] and that [DBR] had an independent obligation to produce them for their depositions as agents of [DBR]. If [DBR] required guidance from the arbitrator as to how the depositions might be structured to address their potential individual and agency statuses, then it was incumbent on [DBR] to approach the arbitrator and seek that guidance or protection. Simply not producing the witnesses was not an appropriate response.

*Id.* at 914-15 (underline emphasis added, italics emphasis in original). The Arbitrator then ordered the parties to meet and confer to schedule the deposition dates. *Id.* at 915.

Throughout January and February 2025, the Arbitrator and the parties engaged in scheduling conferences to try and set the depositions of Gruber, Dickey, Jr., and Longworth.[2] In early January, the Arbitrator entered his second deposition order that required the parties to conduct the depositions of those three DBR employees in Dallas at the beginning of February. *Id.* 856-57. Shortly after the second order, DBR's counsel confirmed February deposition dates for the three employees with G Six's counsel. Doc. 27-1, G Six App., 182. When additional scheduling issues arose, the Arbitrator issued a third deposition order at the end of January that again required the parties to conduct the depositions of Dickey, Jr. and Gruber in early February and now ordered the parties to schedule the deposition of Longworth in mid-February 2025. Doc. 8-1, DBR App., 858-59.

But in early February 2025, DBR changed course and informed G Six that it would not produce Dickey Jr., Gruber, or Longworth for depositions. *Id.* at 895-96. Renewing earlier unsuccessful arguments, DBR contended that it did not have to produce those three employees for depositions because they were not parties to the arbitration. *See id.* In response, G Six filed a motion for sanctions based on DBR's "persistent and deliberate disregard of three successive Orders entered by the Tribunal: the First Deposition Order, the Second Deposition Order, and the Third Deposition Order." *Id.* at 901.

In late February 2025, the Arbitrator issued his fourth deposition order that instructed the parties to conduct the depositions of Dickey, Jr., Gruber, and Longworth at G Six's counsel's office

---

[2] It is uncontested that, at some point during the Arbitration, G Six noticed the deposition of Longworth.

in Florida. *See id.* at 953. The Arbitrator warned DBR that noncompliance with the order could result in the imposition "of the full array of sanctions available under the AAA rules." *Id.*

Despite that warning, DBR informed G Six and the Arbitrator that it would not produce Dickey Jr., Gruber, or Longworth for any depositions. Doc. 27-1, G Six App., 214-15. The depositions of Dickey Jr., Gruber, and Longworth resultingly did not occur.

In late March 2025, the Arbitrator issued a 24-page order that granted G Six's motion for sanctions and systematically rejected each argument DBR raised in its response brief. *See generally* Doc. 8-1, DBR App., 1136-60. Importantly, the Arbitrator rejected DBR's argument that he could not order Dickey Jr., Gruber, or Longworth to attend the depositions:

> [DBR's] first, and principle, argument—that under the FAA, the arbitrator has no authority to subpoena or order a non-party to an arbitration agreement to attend a deposition—is wholly irrelevant to the facts of this case. None of the arbitrator's orders are directed to Dickey, Jr., Gruber and Longworth in their personal and individual capacities. . . . It is [DBR] that has been ordered to schedule and produce its employees for their depositions.

*Id.* at 1152-53. The Arbitrator also identified each AAA rule that he relied upon to issue the deposition orders and resulting sanctions. *Id.* at 1138-40. Ultimately, the Arbitrator imposed the following sanctions against DBR: (1) struck its answer, affirmative defenses, and counterclaim; (2) prohibited DBR from presenting evidence at the hearing and from cross-examining G Six's witnesses, (3) agreed to draw reasonable adverse inferences as requested by G Six, and (4) required DBR to pay costs and attorney's fees deriving from the deposition dispute. *Id.* at 1159.

Despite those sanctions, the Arbitrator made clear that G Six would still be required to prove its prima facie case and damages at the arbitration hearing. I*d.*

At the end of April 2025, the parties attended the arbitration hearing and submitted both pre-hearing and post-hearing briefs. *Id.* at 1. The Arbitrator then issued an interim award where it

found that G Six succeeded on its Illinois Franchise Disclosure Act and negligent misrepresentation claims. *See id.* at 14. The Arbitrator declined to award G Six relief for its fraud/misrepresentation claims and breach of contract claim. *See id.* at 7, 14. In August 2025, the Arbitrator entered the Final Award which incorporated the interim award. *Id.* at 32.

In October 2025, G Six filed its Petition to Confirm the Arbitration Award. *See generally*, Doc. 1, Pet. Confirm Award. In November 2025, DBR filed its Cross-Petition to Vacate the Arbitration Award. *See generally* Doc. 7, Pet. Vacate Award. In its Cross-Petition, DBR argued that the Arbitrator exceeded his authority and was guilty of misconduct—permitting vacatur of the award under 9 U.S.C. § 10. The briefing is complete, and the Court addresses the Petitions below.

## II.

## LEGAL STANDARDS

A.    *Standard to Vacate an Arbitration Award*

"[J]udicial review of an arbitration award is extraordinarily narrow." *Cooper v. WestEnd Cap. Mgmt., LLC*, 832 F.3d 534, 543-44 (5th Cir. 2016) (quoting *Rain CII Carbon, LLC v. ConocoPhillips Co.*, 674 F.3d 469, 471-72 (5th Cir. 2012)). That is due to the "strong federal policy favoring arbitration" and limited grounds for vacatur available under 9 U.S.C. § 10. *Rain CII Carbon, LLC*, 674 F.3d at 472. "Section 10(a), which prescribes the grounds for vacating an arbitration award, 'does not provide for vacatur of an arbitration award based on the merits of a party's claim,' and thus the court 'do[es] not have authority to conduct a review of an Arbitrator's decision on the merits.'" *Brendel v. Meyrowitz*, No. 3:15-CV-1928-D, 2017 WL 1178244, at *6 (N.D. Tex. Mar. 30, 2017) (Fitzwater, J.) (quoting *Householder Grp. v. Caughran*, 354 F. App'x 848, 851 (5th Cir. 2009)). Accordingly, the Court cannot vacate an award for an Arbitrator's "mere errors in interpretation or application of the law, or mistakes in factfinding." *Id.* (citations omitted). The Fifth Circuit has

instructed district courts to resolve any doubts in favor of upholding the arbitration award. *See U.S. Trinity Energy Servs., LLC v. Se. Directional Drilling, LLC*, 135 F.4th 303, 307 (5th Cir. 2025).

The Federal Arbitration Act ("FAA") permits a court to vacate an arbitration award only when at least one of the following four grounds is implicated:

> (1) where the award was procured by corruption, fraud, or undue means;
>
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
>
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
>
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

§ 10(a). The party seeking to vacate the award carries the burden to show that relief is warranted under one of the above grounds. *Weber v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 455 F. Supp. 2d 545, 549 (N.D. Tex. 2006) (Fitzwater, J.) (citations omitted). At bottom, a Court should vacate an arbitration award only in "unusual circumstances." *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 568 (2013).

B.      *Standard to Confirm an Arbitration Award*

Section 9 of the FAA requires a court to confirm an arbitration award unless another court has modified, vacated, or corrected the award. *See Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 587 (2008). A party may petition a court to confirm the arbitration award if the parties consented to the entry of a judgment in the arbitration agreement. 9 U.S.C. § 9. Under AAA commercial Rule R-54, "[p]arties to an arbitration under these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof."

Courts have found that parties that incorporate the AAA commercial rules into their arbitration agreement have impliedly consented to an entry of judgment pursuant to R-54. *See Marshall v. Hum. Servs. of Se. Tex., Inc.*, No. 1:21-CV-529, 2023 WL 1818214, at *2 (E.D. Tex. Feb. 7, 2023) (collecting cases). To seek confirmation of an arbitration award, a party must file with the court its petition, the parties' arbitration agreement, "the selection or appointment, if any, of an additional arbitrator or umpire," any written extensions of time to provide the award, and the award itself. *See* 9 U.S.C. § 13(a)-(b).

### III.

### ANALYSIS

The Court's analysis is separated into two sections, the first on DBR's Cross-Petition to Vacate the Award and the second on G Six's Petition to Confirm. In Section A, addressing DBR's arguments for vacatur under § 10(a)(4) and § 10(a)(3), the Court concludes that DBR failed to carry its burden to show that vacatur is appropriate. In Section B, the Court concludes that the arbitration award must be confirmed.

A.      *DBR Did Not Carry its Burden in Showing That Vacatur is Necessary under § 10(a).*

   1.      <u>The Arbitrator Did Not Exceed His Authority Under § 10(a)(4).</u>

The Supreme Court has warned parties disappointed with their arbitration awards that they carry a "heavy burden" in attempting to set aside the awards under § 10(a)(4), the provision involving arbitrators who exceed their powers. *Oxford Health Plans*, 569 U.S. at 569. "It is not enough . . . to show that the [arbitrator] committed an error—or even a serious error." *Id.* (citation omitted). "[A]n arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Id.* (quoting *E. Associated Coal Corp. v. Mine Workers*, 531 U.S. 57, 62 (2000)) (internal quotation marks omitted). "[T]he *sole* question for [the court] is whether the arbitrator

(even arguably) interpreted the parties' contract, not whether he got its meaning right or wrong." *Id.* (emphasis added). An arbitrator does not exceed his authority when he acts within the powers delegated to him in the arbitration agreement. *See id.*

DBR argues that the Arbitrator exceeded his authority in two ways: (1) when the Arbitrator issued the deposition orders, and (2) when the Arbitrator sanctioned DBR for disobeying the deposition orders. *See* Doc. 7, Pet. Vacate Award, 14-18. The Court addresses each purported overreach in turn.

*First*, the deposition orders. In accordance with the Supreme Court's guidance in *Oxford Health Plans*, the only question the Court can address is whether the Arbitrator, in deciding that he did have authority to issue the deposition orders, arguably interpreted the parties' contract. And the Court's limited review of the arbitration record shows that he did arguably interpret the parties' arbitration agreement.

Relevant here, the parties gave the arbitrator broad authority to resolve disputes according to the FAA and the AAA rules:

> [A]ll disputes that are not resolved through mediation . . . including all disputes relating to the scope, validity, or enforceability of this arbitration agreement . . . shall be submitted for binding arbitration to the office of the AAA. . . . Such arbitration proceedings shall be conducted . . . in accordance with the then-current commercial arbitration rules of the AAA. The arbitrator[ ] shall have the right to award or include in their award any relief that they deem proper in the circumstances.
>
> All matters relating to arbitration will be governed by the Federal Arbitration Act (9 U.S.C. §§ 1 et seq.), . . . this agreement and any and all relationship between the parties . . . shall be governed by and construed in accordance with the laws of the state of Texas.

Doc. 8-1, DBR App., 495-96. The parties agreed to conduct the arbitration "in accordance" with the AAA commercial rules. *See id.* at 495. When an arbitration agreement "explicitly refers to the AAA

rules, those rules become 'incorporated' into the agreement between the parties." *See Sullivan v. Feldman*, 132 F.4th 315, 328 (5th Cir. 2025) (citation omitted).

When the Arbitrator determined he had authority to issue the deposition orders, he at least "arguably" interpreted the arbitration agreement. He identified R-23 and R-24 of the AAA commercial rules and concluded that they permit an arbitrator to oversee discovery. *See* Doc. 8-1, DBR App., 853, 1139. R-23(a) states, "[t]he arbitrator shall manage any necessary exchange of information among the parties with a view to achieving an efficient and economical resolution of the dispute." And R-24 provides arbitrators with enforcement powers. Specifically, it states, "[t]he arbitrator shall have the authority to issue any orders necessary to enforce the provisions of . . . R-23 and any other rule or procedure and to otherwise achieve a fair, efficient and economical resolution of the case, including . . . (e) issuing any other enforcement orders which the arbitrator is empowered to issue under applicable law." Because the Arbitrator identified the AAA commercial rules that he relied on to issue the deposition orders, and the AAA commercial rules are incorporated into the parties' arbitration agreement, the Court finds the Arbitrator did not exceed his authority in issuing the deposition orders.

Thus, DBR's Petition to Vacate the Award requests the Court re-rule on an issue already decided by the Arbitrator. *See* Doc. 7, Pet. Vacate Award, 14-17. But by choosing arbitration, the parties "bargained for the arbitrator's construction of their agreement" and not the Court's interpretation. *See Oxford Health Plans*, 569 U.S. at 569. When deciding a petition to vacate, it is not a court's role to review an arbitrator's decision on the merits. *See Brendel*, 2017 WL 1178244, at *6. "If parties could take 'full-bore legal and evidentiary appeals,' arbitration would become 'merely a prelude to a more cumbersome and time-consuming judicial review process.'" *See Oxford Health*

*Plans*, 569 U.S. at 568-69 (quoting *Hall Street Assocs.*, 552 U.S. at 588). Accordingly, the Court rejects DBR's first § 10(a)(4) argument.

*Second*, the sanctions order. There, the Arbitrator identified the AAA rules that permit the issuance of sanctions. *See* Doc. 8-1, DBR App., 1139-40. The first is R-24, which gives the Arbitrator broad enforcement authority:

> The arbitrator shall have the authority to issue any orders necessary to enforce the provisions of Rules R-22 and R-23 and any other rule or procedure and to otherwise achieve a fair, efficient and economical resolution of the case, including, without limitation:
> . . .
> (d) in the case of willful non-compliance with any order issued by the arbitrator, drawing adverse inferences, excluding evidence and other submissions, and/or making special allocations of costs or an interim award of costs arising from such non-compliance.

The second AAA rule is R-60(a), which authorizes the Arbitrator to impose sanctions against a party to the arbitration:

> The arbitrator may, upon a party's request, order appropriate sanctions where a party fails to comply with its obligations under these Rules or with an order of the arbitrator. In the event that the arbitrator enters a sanction that limits any party's participation in the arbitration or results in an adverse determination of an issue or issues, the arbitrator shall explain that order in writing and shall require the submission of evidence and legal argument prior to making of an award. The arbitrator may not enter a default award as a sanction.

Therefore, as long as the Arbitrator did not issue a default award as a sanction, he was arguably exercising the authority granted to him by the arbitration agreement.

A review of the arbitration record, specifically the sanctions order and arbitration award, shows that the Arbitrator at least "arguably" interpreted the parties' contract when he imposed sanctions against DBR. The Arbitrator identified R-24 and R-60(a) as the AAA commercial rules that authorize arbitrators to issue sanctions. *See* Doc. 8-1, DBR App., 1139-40. The Arbitrator also addressed and rejected any notion that he was entering a default award. *See id.* at 1-4. Accordingly,

because the Arbitrator at least "arguably" construed the parties' agreement in determining that he could impose the sanctions at issue, the Court rejects DBR's second § 10(a)(4) argument.

 2. The Arbitrator is Not Guilty of Misconduct under § 10(a)(3).

Section 10(a)(3) permits vacatur of the arbitration award "where the arbitrators were guilty of misconduct . . . in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced." "To constitute misconduct requiring vacation of an award, an error in the arbitrator's determination must be one that is not simply an error of law, but which so affects the rights of a party that it may be said that he was deprived of a fair hearing." *Laws v. Morgan Stanley Dean Witter*, 452 F.3d 398, 399 (5th Cir. 2006) (citation omitted). "A fundamentally fair hearing is one that 'meets "the minimal requirements of fairness"—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator.' The parties must have an opportunity to be heard 'at a meaningful time and in a meaningful manner.'" *Karaha Bodas Co. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 298-99 (5th Cir. 2004) (citations omitted). "Courts will not say that a movant was denied a fair hearing if the record supports a reasonable basis for the arbitrator's decision." *Avalos v. Chavez*, No. EP-17-CV-241-KC, 2022 WL 18775908, at *3 (W.D. Tex. May 20, 2022) (citing *Laws*, 452 F.3d at 400).

DBR argues that the Arbitrator's sanctions deprived it of a fair hearing. *See* Doc. 7, Pet. Vacate Award, 20-22. This argument is unpersuasive. The parties agreed to conduct their arbitration in accordance with the AAA commercial rules. *See* Doc. 8-1, DBR App., 495. Those rules give the Arbitrator broad authority to issue sanctions, including through adverse inferences and exclusion of evidence under R-24(d). The record shows that the Arbitrator gave DBR multiple opportunities to

comply with the deposition orders prior to issuing the sanctions. If **§** 10(a)(3) was available any time an arbitrator used his sanction power, vacatur of an arbitration award would no longer be an "unusual circumstance." *See Oxford Health Plans*, 569 U.S. at 568. Accordingly, the Court rejects DBR's **§** 10(a)(3) argument.

B.       *G Six's Petition to Confirm the Arbitration Award is Granted.*

"Under **§** 9, a court must confirm an award upon request 'unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11.'" *Jules v. Andre Balazs Props.*, 608 U.S. __, __, 146 S. Ct. 1209, 1215 (2026). Here, G Six has satisfied the necessary pre-requisites to obtain a judgment from the Court. First, G Six has shown that the parties implicitly consented to an entry of judgment by agreeing to conduct their arbitration in accordance with the AAA commercial rules. *See* Doc. 1, Pet. Confirm Award, 5; *see also Marshall*, 2023 WL 1818214, at *2. Second, G Six has provided the Court with the requisite documentation under **§** 13. *See* Doc. 1-2, Patel Decl., 2. Third, the Court has rejected DBR's request to vacate the award.

Therefore, pursuant to **§** 9, the Court **GRANTS** G Six's Motion and **CONFIRMS** the Arbitrator's award of $ 717,480.03 plus interest accruing as of the date of the Arbitrator's Final Award in accordance with applicable law. *See* Doc. 1-3, Final Award, 7.

**IV.**

**CONCLUSION**

For the foregoing reasons, the Court **DENIES** DBR's Cross-Petition to Vacate the Arbitration Award (Doc. 7) and **GRANTS** G Six's Petition to Confirm the Arbitration Award (Doc. 1). The Court **CONFIRMS** the Arbitrator's Final Award (Doc. 1-3). A final judgment will follow.

-14-

SO ORDERED.

SIGNED: July 16, 2026.

JANE J. BOYLE
SENIOR UNITED STATES DISTRICT JUDGE